IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NEWLIFE HOMECARE INC.,
        **Plaintiff**

    v.

EXPRESS SCRIPTS, INC.,
        **Defendant**

3:07cv761

(Judge Munley)

## MEMORANDUM

Before the court for disposition is Plaintiff NewLife Homecare Inc.'s (hereinafter "plaintiff" or "NewLife") motion for a temporary restraining order (hereinafter "TRO"). NewLife asks the court to order Defendant Express Scripts, Inc. (hereinafter "defendant" or "ESI") to pay NewLife over 1.6 million dollars that NewLife claims it is owed. The court held a hearing in this matter on May 2, 2007, and the motion is ripe for disposition. For the reasons that follow, the motion will be granted.

**Background**

    **I. General background**

This case turns on the interpretation of two contracts, one between Blue Cross of Northeastern Pennsylvania and the plaintiff and one between Defendant ESI and the plaintiff. The main legal issue is whether ESI can offset alleged overpayments by Blue Cross under its contract by withholding payments under its own contract for charges that it does not necessarily dispute are due and owing to plaintiff.

NewLife is a licensed pharmacy with its principal place of business in Pittston, Pennsylvania. (Complaint, Doc. 1, hereinafter "Compl." ¶ 11). NewLife serves individuals with hemophilia, bleeding disorders and other chronic conditions. (Compl. ¶ 13).

Patients bring prescriptions from their physicians to NewLife.

Pursuant to the prescriptions, NewLife dispenses specialized medications, products and services directly to the patient and submits the applicable charges to the patient's respective insurance carrier.  Among these insurance companies is Blue Cross of Northeastern Pennsylvania. (hereinafter "BCNEPA").  (Compl. ¶ 14).  NewLife obtains the medicines from pharmaceutical companies and pays for them from the money received from the insurance companies.

BCNEPA contracts with Defendant ESI to manage the pharmacy claims submitted in accordance with the various health insurance policies and plans issued by BCNEPA.  (Compl. ¶ 15).   In order to submit charges on behalf of BCNEPA insureds, NewLife entered into an agreement with ESI in 2001 (the "ESI-NewLife contract").  (Compl. ¶ 16).   According to the ESI-NewLife contract, NewLife must merely examine the identification card presented by the BCNEPA member to determine if the holder is entitled to benefits under the BCNEPA Prescription Drug Program.[1]  (Compl. ¶ 20). ESI then verifies, with information from BCNEPA, that the insured is eligible for the benefits at the time the claim is made.  (Compl. ¶ 21).

NewLife submits bills and charges incurred by BCNEPA insureds to ESI for payment electronically.   At the time the claim is transmitted, ESI sends NewLife either an approval or denial of the claim. (Compl. ¶ 24).

**II. Basis for the lawsuit**

Since February 27, 2007, NewLife has submitted claims on behalf of various BCNEPA members to ESI for medications, products and services in the amount of $896,850.30.  ESI approved these claims.  (Compl. ¶ 41).

---

[1]As explained more fully below, defendant asserts that plaintiff is obligated to do more than examine the identification card.

ESI, however, has not paid this amount. (Compl. ¶ 43). Additionally, since April 4, 2007, NewLife has submitted claims to ESI for an additional $734,508.88. (Compl. ¶ 45). ESI has also approved these claims but has not paid them. (Compl. ¶ 46). Accordingly, ESI owes plaintiff a total of $1,631,359.18 under the ESI-NewLife contract.

Because ESI has withheld payments since February 2007, NewLife is significantly overdue and in arrears to its pharmaceutical suppliers and other suppliers and is unable to pay those debts. (Compl. ¶ 54). NewLife has exhausted its credit limits and is unable to obtain any new products to meet its clients' urgent medical needs. (Compl. ¶ 55). Suppliers that are owed money by NewLife include ASD Speciality Healthcare, Inc., Baxter Healthcare, Corp., Wyeth Pharmaceuticals and Rochester Drug Co-Operative. These companies are owed in excess of $330,000.00. NewLife has an additional $1,372,792.27 due immediately. (Pl. Ex. 1, Bell Declaration ¶ 49).

**III.  Why is ESI not paying?**

NewLife has group health insurance for its officers and employees through BCNEPA ("BCNEPA-NewLife contract"). (Compl. ¶ 25). The BCNEPA-NewLife contract is separate from the ESI-NewLife contract discussed above.

Employees covered by the group health insurance policy include Reverend Gregory M.J. Malia and another employee identified in the complaint only as R.D.[2] (Compl. ¶ 27, 34). Both of these individuals had

---

[2]The full name of R.D. is not provided for purposes of confidentiality under the Health Insurance Portability and Accountability Act. (Compl. ¶ 34).

3

certain prescriptions filled through NewLife between February 28, 2005 and March 31, 2007. (Compl. ¶ 36). Evidently, NewLife submitted claims on behalf of these patients in the relevant time frame, and they were paid by ESI. On March 31, 2007, ESI announced that it was reviewing these payments made on behalf of Malia and R.D. (Compl. ¶ 44). ESI determined that certain of the claims submitted on behalf of R.D. were actually not eligible for coverage as they appeared to be covered by Medicare. The total amount was $273,990.00. (Compl. ¶ 47). Further, ESI determined it had paid claims on behalf of Malia that were covered by Medicare in the amount of $2,018,655.61.[3] (Compl. ¶ 51).

ESI contends that NewLife did not comply with the terms of the BCNEPA-NewLife contract in submitting the claims for Malia and R.D. ESI's position is that NewLife should have coordinated these benefits with Medicare. NewLife vigorously denies any duty to coordinate benefits. ESI notified NewLife that it was withholding all outstanding payments presently due and owing to NewLife under the ESI-NewLife contract in the amount of $1,631,359.18, and any further payments that become due, pending the repayment of the amounts they overpaid on Malia and R.D. (Compl. 53).

ESI argues that it has the right to offset the overpayment under the BCNEPA-NewLife contract by withholding payments under its own agreement with NewLife, the ESI-NewLife contract. ESI maintains this position even though the payments it is withholding may very well be for prescriptions of other patients besides Malia and R.D.

Plaintiff thus filed the instant complaint alleging the following four

---

[3]Admittedly, due to the medical conditions that NewLife's patients suffer from, the medicine that it provides is unusually expensive.

4

causes of action:  Count I:   Breach of fiduciary duties pursuant to ERISA; Count II: Breach of duties under ERISA § 1133; Count III: Breach of Contract; and Count IV: Conversion.

Plaintiff has moved for a Temporary Restraining Order and Preliminary Injunction Pursuant to Federal Rule of Civil Procedure 65 bringing the case to its present posture.  The plaintiff seeks to enjoin the defendant from adjusting, altering, modifying, withholding or otherwise retaining any or all portions of remittance payments for prescription medications, products and services provided by plaintiff since February 2007 and any future remittances for prescription medications, products and services provided by the plaintiff.  In other words, plaintiff wants us to direct the defendant to pay the 1.6 million dollars it allegedly owes and enjoin it from withholding future payments.

**Jurisdiction**

This action is brought pursuant to both federal question jurisdiction, 28 U.S.C. § 1331 and diversity jurisdiction, 28 U.S.C. § 1332.  We have supplemental jurisdiction over the plaintiff's state law claims under  28 U.S.C. § 1367.

**Discussion**

The Third Circuit Court of Appeals has outlined four factors that a court ruling on a motion for a preliminary injunction must consider: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest. Crissman v. Dover Downs Entertainment Inc., 239

F.3d 357, 364 (3d Cir.2001).  These same factors are used to determine a motion for a temporary restraining order.  <u>Bieros v. Nicola</u>, 857 F. Supp. 445, 446 (E.D.Pa.1994).

The above factors merely "structure the inquiry" and no one element will necessarily determine the outcome. The court must engage in a delicate balancing of all the elements, and attempt to minimize the probable harm to legally protected interests between the time of the preliminary injunction to the final hearing on the merits.  <u>Constructors Association of Western Pa. v. Kreps</u>, 573 F.2d 811, 815 (3d Cir.1978). The movant bears the burden of establishing these elements. <u>Adams v. Freedom Forge Corp.</u>, 204 F.3d 475, 486 (3d Cir.2000).   We will address each injunction factor separately.

**I.  Irreparable harm**

The first factor that we will address is whether the plaintiff will be irreparably harmed if injunctive relief is denied.  <u>Crissman v. Dover Downs Entertainment Inc.</u>, 239 F.3d 357, 364 (3d Cir.2001).  To justify injunctive relief, the threat of irreparable harm must be immediate.  <u>ECRI v. McGraw-Hill, Inc.</u>, 809 F.2d 223, 226 (3d Cir. 1987).  Plaintiff asserts it will suffer immediate irreparable harm because it will be forced out of business and cease to exist within weeks if the TRO is not granted.   Additionally, the health and well-being of at least fifty innocent NewLife patients who suffer from catastrophic and life threatening illnesses will be seriously jeopardized if their access to medications and other medical products is interrupted.

Defendant asserts that monetary damages are sufficient to make the plaintiff whole.   Moreover, defendant adds that plaintiff lacks standing to

raise claims that its patients will suffer from a lack of medical care. Regardless, according to the defendant, there are four speciality pharmacies in the BCNEPA network that provide identical services to those provided by NewLife. Thus, the patients will not be without healthcare. Defendant also argued that plaintiff's claim of irreparable harm is mere speculation and that it needs financial statements or projections indicating that it will forced into bankruptcy to demonstrate irreparable harm. Plaintiff responded by submitting business records to indicate that the cessation of its business is imminent. After a careful review, we find that the plaintiff has established that it will suffer irreparable injury as defined under the law if injunctive relief does not issue.

"In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." Instant Air Freight v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). We must determine whether there is the threat of irreparable harm because plaintiff may go out of business and not be around to collect the damages.

The United States Supreme Court addressed the issue of irreparable harm and the cessation of business in Doran v. Salem Inn, Inc., 422 U.S. 922 (1975). In Doran, the town of Hempstead, New York, enacted an ordinance prohibiting waitresses, barmaids and entertainers from appearing in establishments with "breasts uncovered or so thinly draped as to appear uncovered." Id. 924. Three corporations that owned entertainment businesses that featured topless dancing sought a preliminary injunction to enjoin enforcement of the ordinance and

7

prosecutions for violating the ordinance while they challenged its constitutionality in court.  Id. 925-26.  The Supreme Court found that the fact that the plaintiffs would suffer substantial loss of business and potentially be forced into bankruptcy met the irreparable harm standard.  The Court explained as follows:

> As required to support such relief, these respondents alleged (and petitioner did not deny) that absent preliminary relief they would suffer a substantial loss of business and perhaps even bankruptcy. Certainly the latter type of injury sufficiently meets the standards for granting interim relief, for otherwise a favorable final judgment might well be useless.

Id. at 932.

Accordingly, substantial loss of business and the threat of bankruptcy can be sufficient for a finding of irreparable harm.  Several opinions from the Third Circuit Court of Appeals are also instructive on this issue.  For example, in In Re Arthur Treacher's Franchisee Litigation, 689 F.2d 1137 (3d Cir. 1982), Arthur Treacher's applied for a preliminary injunction to have one of its franchisees pay $200,000.00 in past due and current royalties.  Id. at 1141.  Arthur Treacher's argued that it was in a dire financial condition and would be forced into bankruptcy without the money.  Id.  The district court was convinced that irreparable harm had been established.  The Third Circuit disagreed.  The court found that the individual franchisee could not force Arthur Treacher's into bankruptcy and that the record contained merely general statements that the failure to pay royalties would force the company into bankruptcy.  Id. at 1146.  The Third Circuit did *not* hold that being forced into bankruptcy is not irreparable harm, but that the plaintiff had not established that they would in fact be forced into bankruptcy in the absence of injunctive relief.

In <u>Instant Air Freight, Co. v. C.F. Air Freight, Inc.</u>, 882 F.2d 797 (3d Cir. 1989), Instant Air Freight contracted with C.F. Air Freight to provide air freight handling services.  <u>Id.</u> at 798.  This contract represented 80 % of Instant's business.  CF indicated to Instant that it was shutting down the terminal through which the freight handled by Instant had been routed.  <u>Id.</u>  The district court granted an injunction that enjoined CF from terminating its contract with Instant.  <u>Id.</u>  The Third Circuit reversed.   The appeals court found that the district court's conclusion that breaking the contract would force Instant to shut down was not supported by "any financial statements or projections in the record indicating that Instant will be forced into bankruptcy." <u>Id.</u> at 802.  Once again, instead of making a blanket holding that going out of business is never irreparable harm, the court held that the evidence did not support a finding that the plaintiff would in fact go out of business without the injunctive relief.

It is evident from these cases that the law requires convincing proof that a business will in fact cease to exist or be forced into bankruptcy for such an eventuality to be considered irreparable harm.   Therefore, we must examine what proof the plaintiff has presented that it will, in fact, cease to exist if the TRO does not issue.

In support of its claim that it will cease to do business if the injunction is not granted, the plaintiff presents the declaration of Linda M. Abner, plaintiff's Corporate Treasurer and Accounts Manager.  She is the plaintiff's chief financial officer and her duties include managing all daily accounting operations and accounting information systems, including general ledger functions, account payable functions and financial reporting.  (Abner Suppl. Decl. ¶ 2).

9

The plaintiff states that NewLife's suppliers

> have advised NewLife that no further orders will be processed or pharmaceutical products will be delivered until they have received payment on all outstanding invoices. Moreover, several suppliers have indicated that they will begin collection and other legal proceedings to secure payment.
>
> As a direct consequence, NewLife will be unable to continue operations without resupplying the medications and products for dispensation to its customers and will necessarily be forced out of business and existence.

(Bell Declaration ¶¶ 87-88).

According to the Weekly Cash Flow Projection attached to Abner's declaration by May 6, 2007, plaintiff will have a negative cash balance of $999,301.00. By June 10, 2007, that balance will be a negative $1,236,552.00. (Abner Suppl. Decl., Ex. DD). Attached to the declaration are various invoices which indicate that plaintiff is in fact behind in its bills. Ms. Abner indicates that unless defendant releases the outstanding remittance payments, plaintiff will be forced out of business no later than May 15, 2007. (Abner Suppl. Decl. ¶ 9).

Thus, unlike Arthur Treacher's and Instant Air, supra, the plaintiff has presented concrete evidence that it will in fact be forced out of business and/or into bankruptcy due to the defendant's failure to release the payments. We thus find that the plaintiff has established irreparable harm. See N.W. Controls v. Outboard Marine Corp., 317 F. Supp. 698, 703 (D.Del. 1970)("Where the economic loss involved would be so great as to threaten destruction of the moving party's business, a preliminary injunction should be issued to maintain the status quo.")

As set forth above, the plaintiff also asserts irreparable harm to the health and well-being of at least fifty innocent NewLife patients who suffer

10

from catastrophic and life threatening illnesses. Plaintiff asserts that their health will be seriously jeopardized if their receipt of medications and other medical products is interupted. Defendant responds that located within the BCNEPA network are approximately four other specialty pharmacies that provide services identical to those provided by NewLife. (Def. Ex. 2, Koronkiewicz Declar. ¶ 4). The record is unclear as to the manner in which the patients of NewLife will suffer if NewLife goes out of business. At the least, plaintiff has demonstrated that it supplies vital life saving medications to its patients that are not readily available in the typical pharmacy. Although defendant has indicated that other pharmacies in the BCNEPA area can supply these medicines and services, the record contains no indication of whether transferring the prescriptions to other pharmacies will cause a significant hardship to the patients. Therefore, this factor makes our finding of irreparable injury even more appropriate.[4]

Based upon all of the above, we find that the plaintiff has established the likelihood of irreparable harm and this factor weighs in favor of granting injunctive relief.

**II. Likelihood of success on the merits**

The next factor we will examine is the likelihood of success on the merits. To satisfy this element, "[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather the burden is on the party seeking relief to make a prima facie case showing a reasonable probability that it will prevail on the merits." Punnett v. Carter,

---

[4]Evidently, one of the pharmacies that defendant contends can serve plaintiff's patients if plaintiff goes out of business is actually owned by the defendant. (Bell Declaration ¶ 11).

11

621 F.2d 578, 583 (3d Cir. 1980);  Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir.1994)(noting that the movant must generally show a *reasonable* probability of success in the litigation).   We will examine each count of the complaint in turn.

A. Count I

Count I of the complaint alleges that ESI breached its fiduciary duties pursuant to ERISA, 29 U.S.C. §§ 1109 and 1132(a)(2).  (Compl. ¶¶ 56 - 68).  Defendant argues that it cannot be held liable for such a breach of fiduciary duty under ERISA as it performs a "purely ministerial function" and is therefore not a fiduciary.  Additionally, defendant argues that such an ERISA claim can be brought only by an ERISA plan participant, beneficiary or fiduciary.   A pharmacy, such as the plaintiff, is none of these.  Plaintiff did not respond to these arguments, thus we find that plaintiff has not established a likelihood of success on the merits of Count I.

B. Count II

Count II of the complaint sets forth another cause of action under ERISA.  This cause of action is based upon 29 U.S.C. § 1133(2).  Section 1133(2) provides that all ERISA covered employee benefit plans must "afford a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review by the appropriate named fiduciary of the decision denying the claim."  Plaintiff asserts that defendant violated this ERISA provision by withholding payment under the ESI-NewLife contract without a reasonable opportunity for full and fair review.  (Compl. ¶¶ 69 - 75).

According to the defendant, plaintiff does not state a claim under this

section 1133(2) because it is inapplicable to ESI. It applies only to an employee benefit plan. The employee benefit plan in this case is BCNEPA-NewLife contract - - the group health insurance contract - - not the ESI-NewLife contract. Plaintiff did not address this count in its brief or argument. Accordingly, we find that plaintiff has not established a likelihood of success on the merits of Count II.

 C. Count III

Count III of plaintiff's complaint is a breach of contract claim. (Compl. ¶¶ 76 - 90). Plaintiff asserts the ESI has breached its contract by failing to make required payments.

In order to establish a breach of contract claim, the plaintiff must demonstrate:   1) the existence of a contract; 2) a breach of a duty imposed by the contract; and 3) damages.   Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 716 (Pa. Super. Ct. 2005).

In the instant case, the existence of a contract is admitted by both parties.   Under the ESI-NewLife contract, ESI is obligated to pay approved claims on a twice monthly payment cycle, on average thirty (30) days from the date the claim is accepted. (Doc. 5-9, Pl. Ex. D, ESI-NewLife contract, § 3.A.). Plaintiff asserts that in violation of this express term in the contract, ESI has failed to pay claims that have been verified as proper and approved by ESI since February 27, 2007. (Compl. ¶ 82).   ESI does not deny that it has failed to pay. Plaintiff asserts that it is damaged by the defendant's failure to pay and in fact may be forced out of business by the failure.   We find, therefore, that plaintiff has made out a prima facie showing that it will prevail on the breach of contract claim, which is all that is needed to establish a likelihood of success on the merits.   Punnett v.

Carter, 621 F.2d 578, 583 (3d Cir. 1980).

**Significantly, ESI does not challenge the validity of the claims at issue.** Rather, it asserts that it may offset overpayment made under the BCNEPA-NewLife contract[5] by not paying these claims. In support of its position that such a defense is viable, ESI cites to its "Claims Adjudication Guidelines" which provides:

> Claims adjustments will automatically be credited to or debited from your remittance. When a complete claim reversal cannot be applied, a manual adjustment will be posted to your next remittance. If a claim reversal or manual adjustment cannot be applied, a manual invoice will be sent for unapplied adjustments outstanding for more than 90 days.

(Doc. 3-10, Pl. Ex. E, § 2.11).

This paragraph does not establish defendants' position that it can claim money was overpaid over a period of two years under the BCNEPA-NewLife agreement, and ESI can thus stop payment under the ESI-NewLife agreement until all the overpayments are repaid. This paragraph does not establish that ESI has the authority to make unilateral retroactive

---

[5]We note that the briefs of the parties and the oral argument indicate that many factual issues are present with regard to whether Malia and R.D. were actually overpaid under the BCNEPA-NewLife contract. These issues include whether Medicare should have actually been the primary provider and whether NewLife had a duty to coordinate benefits under the BCNEPA-NewLife contract. Terms are found in both the BCNEPA-NewLife contract and the ESI-Newlife contract that need to be interpreted before a final determination of the merits of this case. (See Def. Ex. 9, the Blue Cross Contract, ¶ 18 (indicating that the policy excludes Medicare covered charges); and ESI contract, attached to Compl., § 2.A.1 (indicating that plaintiff must examine the identification card presented by the insured and make other reasonable steps to determine if the holder of the card is eligible for benefits)). Discovery is need to elucidate these issues.

"adjustments." Accordingly, this defense does not overcome plaintiff's prima facie showing of a likelihood of success on the breach of contract claim. We thus find a significant likelihood of success on the merits of plaintiff's breach of contract claim.

    D. Count IV

Count IV of plaintiff's complaint sets forth a cause of action for conversion. (Compl. ¶¶ 91 - 102). According to the defendant, the plaintiff fails to state a cause of action for conversion, because plaintiff seeks general money damages, not recovery of a specific personal property.

Plaintiff has not established a likelihood of success on this claim. Pennsylvania courts have held that "failure to pay a debt is not conversion." Francis Bernhardt, III, P.C. v. Needleman, 705 A.2d 875, 878 (Pa. Super. Ct.1997) (citing Petroleum Marketing v. Metropolitan Petroleum Corp., 396 Pa. 48, 151 A.2d 616 (1959)). In this case, plaintiff is seeks damages for failure to pay a debt. Therefore, we find at this point that plaintiff has not demonstrated a likelihood of success on the merits on Count IV of the complaint.

Overall, therefore, we find that the plaintiff has established a likelihood of success on the merits on one count of its four count complaint. We emphasize that the plaintiff has not established a right to a final decision on the merits, but rather that it has established a prima facie showing of a reasonable probability that it will prevail on the merits. Because there is a likelihood of success on the merits with regard to plaintiff's breach of contract claim, we find that this factor weighs in favor of granting injunctive relief.

### III. Balance of harm

The third factor for us to examine is the harm the defendant might suffer if relief is granted. Crissman, 239 F.3d at 364. In considering this factor, we "must undertake to balance the hardships to the respective parties." Pappan Enterprises, Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 805 (3d Cir. 1998). After a careful review, we find that the balance of hardships favors granting the injunction. The harm that will be faced by the plaintiff if the injunction is not granted is the cessation of their business. The harm that will come to the defendant if the injunction is granted is that they will pay over 1.6 million dollars to the plaintiff. The defendant does not contend that this money is not owed under the ESI-NewLife contract.[6]

Defendant argues that it will suffer more harm if the TRO is granted. According to the defendant ESI has the right under their agreement to offset the payments as they are doing and to order otherwise would contravene the express intention of the parties. As set forth above, however, at this point of the litigation it is impossible to determine the merits of the parties' claims. Accordingly, we find no place for this argument in our balancing of the hardships.

Defendant also argues that the granting the injunction would give other pharmacies like NewLife incentive to act in a similar manner. Defendant has presented no evidence, however, that this fear is reasonable and that there are others in a similar situation to the plaintiff.

Finally, defendant argues that because plaintiff is in such great

---

[6]Instead of arguing that they do not owe the money, defendant asserts that they can offset the amount owed because of overpayment under the Blue Cross-NewLife insurance contract.

16

financial distress, it is unlikely that defendant will be able to get the money back at the conclusion of the proceedings. We find that the defendant does not accurately assess this factor. Plaintiff blames its financial distress on the payments withheld by the defendant and argues that bankruptcy will result unless defendant pays the money. There is no indication that plaintiff will be forced into bankruptcy even if the injunction is granted and the money *is* paid. Thus, defendant's argument is not convincing.

It is appropriate at this point to discuss the financial situation of Defendant ESI. According to recently filed financial statements, ESI has on hand in cash or equivalents 207.20 million dollars. http://finance.google.com/finance?fstype=ci&cid=655689. Its total assets are 5.5 billion dollars and its total equity is 1.288 billion dollars. Balancing the harm of a multibillion dollar corporation paying 1.6 million dollars versus plaintiff going out of business if the money is not paid clearly favors the plaintiff.

Based on the above, we find that the balance of interests favors the plaintiff.

**IV. Public interest**

The final factor to consider is whether the public interest favors the issuance of preliminary relief. Crissman, 239 F.3d at 364. We have explained above that plaintiff will suffer irreparable harm absent the injunctive relief and that plaintiff has established a likelihood of success on the merits. We bear in mind therefore that "if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff."

American Telephone and Telegraph Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1427 n.8 (3d Cir. 1994).

Granting the injunction will be in the public interest in that it will be enforcing the ESI-NewLife contract and a public interest exists in the enforcement of contracts.  In addition, a public interest exists in individuals obtaining the medicines they need.  Granting the injunction will further this interest.  Moreover, there is a public interest in protecting companies from being forced out of business due to a contract dispute before that contract dispute can be adjudicated in court.  Therefore, we find that the public interest favors granting the plaintiff's motion.

**Conclusion**

The issuance of the requested TRO is supported by our analysis of the four TRO factors.  As discussed above, the four factors merely "structure the inquiry" and no one element will necessarily determine the outcome.  We engage in a delicate balancing of all the elements, and attempt to minimize the probable harm to legally protected interests between the time of the preliminary injunction to the final hearing on the merits. Constructors Association of Western Pa. v. Kreps, 573 F.2d 811, 815 (3d Cir.1978).  The balancing of the factors is the instant case is not difficult as we have found that they all weigh in favor of granting the injunctive relief.  Plaintiff has established irreparable harm, a likelihood of success on the merits, the balance of  interest favors the plaintiff and the public interest favors the granting of injunctive relief.  Thus, the plaintiff's motion will be granted.  An appropriate order follows.

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NEWLIFE HOMECARE INC.,**<br>　　　　**Plaintiff**<br><br>　　v.<br><br>**EXPRESS SCRIPTS, INC.,**<br>　　　　**Defendant** | 3:07cv761<br><br>**(Judge Munley)** |

## **ORDER**

　　**AND NOW**, to wit, this 4th day of May 2007, the plaintiff's motion for a temporary restraining order[7] (Doc. 5) is hereby **GRANTED**.

　　The defendant is ordered to pay immediately to plaintiff the $1,631,359.18 outlined in the complaint as due for prescription medications, products and services provided by the plaintiff and billed through February 2007.  The defendant is hereby enjoined and restrained directly or indirectly from adjusting, altering, modifying, withholding or otherwise retaining any and all portions of remittance payments due to the plaintiff for prescription medications, products and services provided by plaintiff until such time as the issues in this litigation are finally determined.

　　This order shall remain in full force and effect until this court specifically orders otherwise.

---

[7]While the title of the plaintiff's motion indicates that it also seeks a preliminary injunction, we rule only on the temporary restraining order portion of the motion.  We will dispose of the preliminary injunction after an appropriate time for discovery is provided, and we will most likely combine the preliminary injunction hearing with the final trial on the merits.  See FED. R. CIV. PRO. 65(a)(2).

The plaintiff is ordered to post a bond in the amount of $10,000.00 with the Clerk of Court.

By further order of court, a status conference will be scheduled whereat a schedule for discovery and the date for the full hearing on the merits will be discussed.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**